Thank you. The next case on the calendar is United States v. Diop, 24-3774. Whenever you're ready. Doug Beavers for Gabrielle Diop. I'd ask to reserve two minutes for a reply. That's fine. In Castillo, this Court used Kaiser analysis to hold that the phrase offense of distribution of controlled substance unambiguously did not include offenses of distribution that did not happen, such as conspiracy and attempt. Mr. Diop's case, he was sentenced for losses that also did not happen. Attempts. In this Court, in U.S. v. Curuloc, this Court held that loss unambiguously did not mean fictional gain, unconnected to actual losses. After Castillo, in an unpublished decision, Abouamo Abouamo. We know this case. 2024 U.S. App, Lexus 30558, reaffirmed that loss was unambiguously at least not meaning fictional gains, not actual losses. These decisions holding that loss and distribution were unambiguous do not mean that those words for all sets of facts always must be unambiguous. Well, you're kind of leaving out Yoffa, right? Right. In Yoffa, the Court held that loss was ambiguous as to one set one certain difficult set of facts. So it sounds to me like you're looking at language in a guideline and telling us that you think it's ambiguous as applied to a set of facts, as opposed to just looking at the text. Is that what you're doing? I think that a federal court always has to look at this concrete issue. Can't just rule as to whether a word is always ambiguous for all purposes. Because if we go back to Kaiser and look at what Justice Kagan said, the problem of Kaiser is that regulations may be generally ambiguous when applied to some fact patterns. It's not just, and she gives us an example, liquids. Is pate a liquid? That might be ambiguous. But the fact that the regulation may be ambiguous as to pate doesn't mean that it's unambiguous to water and ice. I appreciate the point. Go ahead, Judge Bress. Well, I guess I was going to interrupt you. Not at all. That's fine. We have Yoffa. Yoffa says loss is genuinely ambiguous. It seems like the question in this case is, is it a reasonable interpretation, given that ambiguity, which we have precedent that now says that's ambiguous, is it within the zone of ambiguity to say that intended loss can count as loss? So what's your answer? Well, I think it's clearly not within the zone of ambiguity because otherwise, I mean, Yoffa itself says they're not resolving this issue in Put No. 5. In addition, Yoffa could not have ruled that the word loss was ambiguous for all purposes because that would have put it into direct conflict with Kiriuluk, and they didn't have authority to overrule Kiriuluk as another panel ruling on the exact same word. The issue, the way I see it, is that loss in Yoffa, this Court was dealing with the issue of how you calculate loss. It's ambiguous as to how you calculate loss. It's always been loss in restitution cases. There's ambiguity in the restitution statute that predated the guidelines, and it was part of the same statutory scheme. The restitution guidelines said if it was difficult to calculate, just don't do it. This statute is not the same way. Loss does have some ambiguity as to how you calculate the levels and the exact dollar value, but the definition of what is or isn't a loss, that is much more a straightforward interpretation of the word, and I think also we need to look at the issue of, if we go back to the statutory scheme, the relevant conduct statute existed at the same time that the sentencing commission passed 2B.1.1 and 2F.1.1, and 2F.1.1 applied intended loss in the text of the guidelines, and 2B.1.1 didn't apply intended loss in that. So there's clear statutory history or regular drafting history where the commission drafted the relevant conduct statute and together in the same package included one section that did include intended loss, one section that didn't include intended loss, and I believe the tax statute also, which included, expressly included intended loss. But doesn't the relevant conduct provision, you know, at a broader level, more support treating losses including intended loss? Well, if you don't look at that, if you were operating on a blank slate maybe, but if at the time that they wrote that statute, the relevant conduct statute, they also included two separate statutes, one that included intended loss, one that didn't include, it's clear that that system, looking at those three statutes together, so that the relevant conduct statute would have made 2F.1.1 relevant. How about just like the basic structure and operations of the guidelines in terms of the objectives of treating people who have similar culpability similarly? Because, you know, by the logic of your argument, somebody can, you know, intend to inflict a massive fraud, and as long as the authorities catch them before they do that, their loss is essentially zero, but somebody who accomplishes a small fraud is going to have a higher loss calculation. It seems like the guidelines are trying to get away from that. Well, I think the problem is that that is a major policy decision, and I think that the most recent sentencing commission made that policy decision that, the way that you suggest, that it should, you should include all the actual loss, but Congress approved that change after Mr. Diop's case. The last time Congress approved a change in the guidelines, it approved the removal of the actual, of the intended loss from the term 2.1. Right, but when we're looking at cases like Yoffa that talk about why the term loss is ambiguous, that's one of the things that case talks about is this issue of essentially fairness across defendants. That, I think, when you're dealing with gain, I think there's a major problem. That's actual losses. Yoffa dealt with actual losses that you couldn't calculate. So you've got to, there's an actual harm. As to the other issue of whether there should be, whether there should be identity between actual and intended loss, I think that is a major policy decision that has to be approved by Congress, and I understand that the guideline commission tried to do it by regulation, and that they did it wrong. They didn't get Congress' approval. When they noticed it, Congress, this Congress fixed it, but we're dealing with back when this guideline was written, and when actual loss was taken out, we have to presume that Congress, in approving that, intended it to be that way. Can you address one of the points made, and it was one of the Sixth Circuit decisions that I think ruled against your position, and I think the Sixth Circuit decision's point was if you don't consider intended loss, then you can't fully apply another provision of the sentencing guidelines. Forget the one they referred to. You have to consider all harm that resulted from and was the object of the acts, and the Sixth Circuit said, well, if we can't consider intended harm, then we really can't give meaning to that provision. Can you address that? Well, I think they did not address, as the dissent in that case did address, the problem that that interpretation would have conflicted with the original guidelines that did include in one section and did not include in another section and still includes it in the tax code, includes that you have to go to the express interpretation of that statute, and Castillo focuses on related statutes, not some general relevant conduct statute. It also would unravel, and there are many, many guidelines that would be affected by the relevant conduct. There are many, many guidelines where it's not said whether it doesn't cover the whole loss, whether there's the term distribution that was in Castillo is all over the guidelines in 2D1.1. Does that apply to intended distribution or conspiracy? Is a house where you just talked about drug distribution, is that a drug house? Those are — that would conflict with Castillo if you incorporate the relevant conduct guideline to every single word in the guideline. That's what I think their decision does. Counsel, you're out of time. Thank you. Thank you for your argument. For planning purposes, we'll put two minutes on the clock when you come back. We took up a lot of your time with our questions. We'll hear from the State police. Good morning, Your Honors. May it please the Court. I'm Sam Stefanky on behalf of the United States. This Court should affirm the district court sentence of Defendant Gabriel Diop based on the full amount of money that he took concrete steps to steal. I'd like to address a couple of the points Mr. Beavers made. He seems to want to read Section 1B1.3 entirely out of the guidelines book. He says it was a major policy decision that Congress made to recently amend the guidelines to include intended loss in the text. That would be a major policy decision, and it was, and that's why 1B1.3 has been around for so long. 1B1.3 establishes the overarching structure of the guidelines, and it requires that a sentencing court look to a defendant's acts and omissions that were undertaken, counseled, induced as part of a common fraud scheme, common course of conduct, like what Mr. Diop committed here. So it was not as big of a change, I think, as Mr. Beavers would like to articulate it to be that this idea that intended loss should be subsumed under loss. I'd also like to address Judge Bress's question about is intended loss within the zone of ambiguity that was identified in Yoffa, and the answer is 100 percent yes. Yoffa articulated that zone of ambiguity quite expansively. It stretches at a minimum along the spectrum from the actual calculable loss experienced by victims to the far broader harms involved in and arising out of a defendant's conduct. And so just by looking at that particular definition of the zone of ambiguity that the Yoffa panel identified, Mr. Diop's intended loss was appropriately accounted for. This is now like a time-limited problem because of the change to the guidelines. Do you have any sense of how many cases are, you know, in the pipeline that are in this transitional phase that this issue still matters? Not across the country, Your Honor. I do know that there is at least one other case in my district, the Eastern District of California, where this is of moment. I can't imagine it's all too, too many cases where it applies, but it's still an important issue because the way that this panel interprets the interplay between 1B1.3 and 2B1.1 has cascading effects through a number of other guidelines. How would that be the case? Why would that matter going forward, you know, with the new guidelines? Because if this Court adopts somewhat of a restrictive reading of the interplay between 1B1.3 and 2B1.1, other guideline provisions that may be affected by 1B1.3 command to include all harms that were intended by a defendant could be affected. So this is a small issue in terms of the number of defendants it might affect, but it's a large issue as far as statutory interpretation of the guidelines moving forward. Your friend on the other side has an argument that if we interpret this loss to mean intended loss, then lots of provisions in the guidelines would have it implied, intended in front of them. Can you address that? Yes, Your Honor. He's incorrect for at least two reasons. First, 1B1.3 clearly says unless otherwise specified in the particular guideline, here's the background rule. So a good example would be the tax provision, I believe, 2B1.4, if my memory serves correctly. In other words, if a provision says someone distributes drugs and they get an enhancement, we're not going to then turn around and say that means intended to distribute drugs, even if you didn't actually distribute them. Yes, Your Honor. And Mr. Beaver's argument also relies on — it mischaracterizes what the government is saying. The government is not saying if you think something, if you think maybe one day I should steal a million dollars, suddenly you have a $1 million loss amount. That's not even close to what the government's arguing, and that's not even close to what 1B1.3 says. 1B1.3 says a defendant must take an action, and if it's a groupable offense, it must be part of the same course of conduct or common scheme or plan. This is not — the guidelines are not punishing thoughts. The guidelines are incorporating culpability for a defendant's actions. Are there any further questions? I don't think we have any further questions.  Thank you. Can I have one minute? You have two minutes. Thank you. First, because of the Hackett decision, applying plain error to this issue based on the split in the circuits, there seem to be only about two or three cases that this would apply to. And I think that going forward, the issue that you raised about how do you punish attempted loss, is it exactly the same or not? I think it's easier — it's practically more likely to get downward variances where the harm is for attempted loss from this new guideline than it would be for the government to get upward variances to take into account all of the — Explain that to me. I thought that now this issue would be basically moot under the new guidelines. Right. And defendants could, if the harm was far below the — if the intended loss was massive and somebody only got $2, I think a lot of judges would down vary to some extent. Wasn't that available here, though? I mean, but the problem for your client is that that's not what he did. He was — he intended very much to try to get another $9 million, and that was stopped. Right. But not for lack of trying. Right. And if it went the other way, if you interpret the guidelines the way that I'm saying, the government would have the authority to try to seek an upward variance for that. Upward variances are harder to get than downward variances statistically, so I think that had a lot to do with why — how we're going to resolve that problem. It's probably not likely that every case will be exactly the same going forward. I think — so there are just these three people. I think the other issue is that the government's argument that 1B1.1 should take into account other — all object of such acts, that would have been a massive delegation of authority to the Sentencing Commission to basically rewrite regulations to reinterpret everything in the guidelines. That's all. Thank you, counsel. Thank you both for your arguments. We're going to take a very quick five-minute break before we hear the last argument on the calendar.
judges: CHRISTEN, LEE, BRESS